UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTHUR VICTOR LEIJA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN,[1] Acting Commissioner of Social Security<br><br>　　　　Defendant. | 1:13-cv-1575 GSA<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

'

**INTRODUCTION**

Plaintiff Arthur Victor Leija ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for Supplemental Security Income payments under Title XVI of the Social Security Act. The matter is pending before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[2]

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this action.

[2] The parties consented to the jurisdiction of a United States Magistrate Judge. *See* Docs. 8 & 9.

## SUMMARY OF THE ADMINISTRATIVE PROCEEDINGS

Plaintiff filed a Title XVI application for Supplemental Security Income on September 21, 2009, alleging disability beginning on August 1, 2007. AR 154-161. His claim was denied initially and upon reconsideration. AR 85-88, 93-99. Subsequently, on November 15, 2011, an administrative law judge ("ALJ") conducted a hearing on Plaintiff's claim. AR 29-76. Plaintiff was represented by an attorney and testified at the hearing; a vocational expert also appeared and testified. AR 29-76. In a decision dated November 23, 2011, the ALJ found that Plaintiff was not disabled because he could perform jobs that exist in significant numbers in the national economy. AR 15-24. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. AR 10-12. Plaintiff then commenced this action in District Court.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether (1) it is supported by substantial evidence and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id*. The ALJ's findings will be upheld "if supported by inferences reasonably drawn from the record." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

///

# DISCUSSION

Plaintiff asserts the following claims: (1) the ALJ failed to comply with the requirements of Social Security Ruling ("SSR") 00–4p; (2) the ALJ's step five determination that Plaintiff is able to perform jobs that exist in significant numbers in the national economy is not supported by substantial evidence; and (3) the ALJ improperly rejected plaintiff's subjective testimony.

### A. The ALJ Complied With SSR 00-4p

The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with certain limitations, including that he "should be allowed to alternate positions every 30 minutes for brief breaks." AR 20-21. The ALJ further determined that Plaintiff did not have any past relevant work. AR 23. Relying on testimony from a vocational expert ("VE"), the ALJ determined that Plaintiff could perform alternative work activity, and accordingly determined that Plaintiff was not disabled under the Social Security Act. AR 23; 24; 71-74. The VE testified that Plaintiff could perform leaf tier, ampoule sealer, and assembler jobs consistent with his RFC, as set forth in the Dictionary of Occupational Titles ("DOT"). In addition, because the DOT does not address the ability to frequently switch between sitting and standing positions in various jobs, the VE eroded by 50 percent the job numbers applicable to the three occupations. Thus, first the VE identified, with reference to the DOT, three occupations that were consistent with Plaintiff's RFC; next, the VE eroded by 50 percent the number of jobs within each occupation so as to account for the sit/stand restriction the ALJ had incorporated into Plaintiff's RFC. Plaintiff argues that the VE's testimony conflicted with the DOT because the DOT does not address the ability to frequently switch sitting and standing positions within each occupational classification. Plaintiff further argues that pursuant to SSR 00-4p, the ALJ could not rely on the VE's testimony unless she resolved the apparent conflict between the VE's testimony and the applicable job descriptions in the DOT by obtaining a reasonable explanation from the

3

VE for her deviation from the DOT.

SSR 00–4p states that "[w]hen a [vocational expert] ... provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that [vocational expert] ... evidence and information provided in the [Dictionary of Occupational Titles]." SSR 00–4p further provides that the adjudicator "will ask" the vocational expert "if the evidence he or she has provided" is consistent with the Dictionary of Occupational Titles and obtain a reasonable explanation for any apparent conflict. *Massachi v. Astrue*, 486 F.3d 1149, 1152–53 (9th Cir. 2007) (alterations in original). Here the ALJ asked the VE if her testimony conflicted with the DOT, and the VE answered in the negative. Nonetheless, Plaintiff asserts that the VE's testimony did in fact conflict with the DOT because the VE testified that Plaintiff had the RFC to perform certain jobs that existed in significant numbers in the national economy while the DOT does not the address the availability of a sit/stand option within its occupational classifications. Defendant responds that the ALJ was not bound by SSR 00-4p here because there was no apparent conflict between the VE's testimony and the DOT. Defendants argue that because there was no conflict to resolve, the ALJ was not required to obtain an explanation from the VE for her testimony that sedentary jobs with a sit/stand option consistent with Plaintiff's RFC were available in significant numbers in California. For the reasons discussed below, the Court is not persuaded by Plaintiff's argument that the fact that the DOT is silent as to a sit/stand option in its occupational classifications creates an apparent conflict with VE testimony regarding the availability of jobs incorporating a sit/stand option.

The DOT does not discuss the availability of a sit/stand option and "the Ninth Circuit has not considered whether a sit/stand option creates a conflict with any of the occupations in the DOT." *Gilmour v. Colvin*, No. 1:13–cv–0553 BAM, 2014 WL 3749458, at *8 (E.D. Cal. July 29, 2014). A number of other courts, however, have found that there is no apparent conflict between

4

the DOT and a VE's testimony about the availability of jobs with a sit/stand option. *Id.; see also Edwards v. Colvin,* No. 2:13-CV-1461 DAD, 2015 WL 673441, at *4 (E.D. Cal. Feb. 17, 2015) (collecting cases); *Forrest v. Commissioner of Social Sec.*, No. 14–5421, 2014 WL 6185309, at *4 (6th Cir. Nov.17, 2014) ("But the DOT does not discuss whether jobs have a sit/stand option ... and therefore the vocational expert's testimony supplemented, rather than conflicted with, DOT job descriptions.");[3] *Zblewski v. Astrue*, 302 Fed. Appx. 488, 494 (7th Cir. 2008) ("Because the DOT does not address the subject of sit/stand options, it is not apparent that the testimony conflicts with the DOT.");[4] *Strain v. Colvin*, No. CV 13–1973 SH, 2014 WL 2472312, at *2 (C.D. Cal. June 2, 2014) ("Because the DOT does not address the subject of sit/stand option, it is not apparent that the testimony of the VE conflicts with the DOT."); *McBride v. Commissioner of Social Sec.*, No. 2:12–cv–0948 CMK, 2014 WL 788685, at *8 (E.D. Cal. Feb.25, 2014) ("The DOT does not address the issue of a sit/stand option for these positions, but there does not appear to be any conflict with plaintiff's need to sit after an hour of standing, as the VE testified. Therefore, the undersigned sees no apparent conflict between the VE's testimony and the DOT."); *Conn v. Astrue*, 852 F.Supp.2d 517, 528 (D. Del. 2012) ("the VE's testimony and the DOT are not in conflict; the DOT simply does not address sit/stand options"); *Harvey v. Astrue*, No. 09–2038 CW, 2010 WL 2836817, at *14 (N.D. Cal. July 16, 2010) ("Where the DOT does not include information about a particular aspect of a job—such as the existence of a sit/stand option—it is proper to consult with a VE, as SSR 83–12 instructs. Such testimony supplements the DOT, rather than conflicting with it.").

Moreover, in this case, to account for Plaintiff's need for a sit/stand option, the VE eroded 50 percent of the available jobs in the sedentary occupations she had identified based on the DOT, finding that the remaining 50 percent of the jobs in those occupations would allow for the

---

[3] Citation to this unpublished Sixth Circuit opinion is appropriate pursuant to Sixth Circuit Rule 32.1.
[4] Citation to this unpublished Seventh Circuit opinion is appropriate pursuant to Seventh Circuit Rule 32.1.

sit/stand option included in Plaintiff's RFC by the ALJ. On cross examination, Plaintiff's counsel did object to or question the VE's testimony concerning the availability of jobs allowing for the sit/stand option. Courts considering similar issues have declined to find a conflict between VE testimony and the DOT in these circumstances. *Coleman v. Colvin*, No. EDCV 13–1834 AGR, 2014 WL 4080007, at *4 (C.D. Cal. Aug.18, 2014) ("This court agrees with the decisions that decline to find an 'apparent' conflict when the DOT is silent about a particular mental or physical requirement and the claimant's counsel failed to raise or identify any conflict to the ALJ."); *Gilmour v. Colvin*, No. 1:13–cv–0553 BAM, 2014 WL 3749458, at *8 (E.D. Cal. July 29, 2014) (even if VE's testimony conflicted with the DOT, any error was harmless where VE considered the sit/stand option and eroded the number of jobs available as part of that consideration); *Hirschy v. Comm'r of Soc. Sec.*, 2012 WL 996527, * 11 (E.D. Cal. Mar.23, 2012) (ALJ's error in not questioning the VE on whether a conflict existed with the DOT deemed harmless since the VE addressed the sit/stand option and eroded available jobs accordingly); *Herrera v. Colvin*, No. EDCV 13–1734 SP, 2014 WL 3572227, at *9 (C.D. Cal. July 21, 2014) (any deviation from the DOT was resolved because the VE "rendered an expert opinion on the lack of occupational erosion caused by the sit/stand option" in the jobs under consideration, i.e., "hand bander and table worker" jobs, and the VE was not required to detail any reasons for her determination"). Other courts gone further, finding that where a VE could have addressed the issue of any conflict with the DOT, and a claimant's counsel fails to raise the issue at the hearing, the issue is waived. *See Savasli v. Colvin*, No. EDCV 13–1632 FFM, 2015 WL 263482, at *2 (C.D. Cal. Jan. 20, 2015). The *Savasli* court stated:

> Particularly where, as here, it is not intuitive that elevating the legs would be precluded by the DOT definition, plaintiff should have raised the issue at the hearing if he wished to preserve it. The VE could have addressed the issue on the record avoiding the entire basis for plaintiff's complaint herein. Under these circumstances, the Court finds that plaintiff has waived the issue.

6

*Id*. Here, the Court finds that the ALJ complied with the requirements of SSR 00-4p because the VE considered the sit/stand option included in Plaintiff's RFC, identified specific occupations that Plaintiff could perform, and eroded the job numbers for those occupations in order to account for his sit/stand limitation.

### B. The ALJ Properly Relied on the VE's Testimony Regarding Job Numbers

(i) Applicable Law

A claimant who can engage in work that exists in the national economy is not disabled. The Commissioner must demonstrate that the claimant can perform jobs that exist "in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Gutierrez v. Comm'r of Soc. Sec*., 740 F.3d 519, 523–25 (9th Cir. 2014). "The burden of establishing that there exists other work in significant numbers"—either nationally or regionally—"lies with the Commissioner." *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012). If a reviewing court finds the number of jobs at either the regional or national level significant, the ALJ's decision must be upheld. *Id*. at 390. There is no "bright-line rule for what constitutes a significant number of jobs" in a region or in the national economy. *Id.* at 389.

An ALJ properly relies on a VE's "testimony regarding the number of relevant jobs in the national economy." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) ("An ALJ may take administrative notice of any reliable job information, including information provided by a VE."). "A VE's recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required." *Id.*

An ALJ's determination that work that a claimant can perform exists in significant numbers in the regional or national economy must be supported by substantial evidence. The "substantial evidence" standard involves a quantum of proof that is "more than a mere scintilla

but less than a preponderance" of the evidence presented to the adjudicator. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is such that "a reasonable mind might accept as adequate to support a conclusion." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). A reasonable mind need not accept obvious errors in a VE's testimony that lead to implausible results. *See Farias v. Colvin*, 519 F. App'x 439, 440 (9th Cir. 2013) ("A reasonable mind would not accept the VE's testimony that there are 3,600 head dance hall hostess positions in the local economy and 342,000 in the national economy."). Moreover, a reviewing court should "weigh both the evidence that supports and the evidence that detracts from the ALJ's factual conclusions." *Gutierrez*, 740 F.3d at 523.

    (ii)    <u>Analysis</u>

At the administrative hearing, the VE testified that a person with Plaintiff's RFC would be able to do hand packaging, material handler, and assembler jobs that were available in significant numbers in the California economy. AR 47-48. The VE testified that hand packaging jobs included ampoule sealer jobs (DOT No. 559.687.014), with 3000 jobs in the State of California. She also testified that material handling jobs included leaf tier jobs (DOT No. 529.687-138), with 5000 jobs in California. Finally she testified that there were 3000 assembler jobs (DOT 700.684-014) in California. The VE eroded all these jobs by 50 percent in order to account for the sit/stand limitation included in Plaintiff's RFC. AR 47-49.

Plaintiff challenges the VE's testimony regarding the number of jobs in California for each DOT job classification that she determined was compatible with Plaintiff's RFC. Specifically, with reference to employment numbers compiled by the Bureau of Labor Statistics in May 2013, Plaintiff alleges that only 2,970 national jobs exist for the DOT's ampoule sealer job classification; 460 national jobs exist for DOT's leaf tier occupational classification; and 230 jobs national jobs exist for the DOT's assembler job classification. Doc. 16 at 12-13. Plaintiff

alleges that collectively these job numbers do not constitute a significant number of jobs in the national economy and do not reflect an appropriate regional distribution. Doc. 16 at 14. Plaintiff also asserts that the ALJ erred in not asking the VE to describe her methodology for calculating the job numbers she cited. Doc. 16 at 16.

As discussed below in more detail, the Court finds that the ALJ did not err in her step five determination by relying on the VE's testimony regarding the number of jobs available in California that Plaintiff could perform. As an initial matter, the Court notes that although Plaintiff was represented by counsel at his administrative hearing, counsel made no attempt to question the VE regarding her methodology or to challenge her testimony regarding the numbers of jobs available that Plaintiff could perform. Furthermore, Plaintiff cites no authority for his contention, raised for the first time in this appeal, that the VE was required to explain her methodology for calculating the number of jobs available for each occupational classification at issue. Contrary to Plaintiff's contention, applicable case law clarifies that no "additional foundation" beyond a VE's "recognized expertise" is required for the VE's testimony regarding the availability of jobs:

> An ALJ may take administrative notice of any reliable job information, including information provided by a VE. A VE's recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required.

*Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (citation omitted); *also see Lang v. Comm'r of Soc. Sec.*, No. 1:13-cv-00590-SAB, 2014 WL 1383247, at *5 (E.D. Cal. Apr. 8, 2014).

Plaintiff further suggests that employment statistics compiled by the Bureau of Labor Statistics indicate that the VE's testimony in this case is unreliable. As discussed below, the Court finds Plaintiff's argument unpersuasive. The Bureau of Labor Statistics provides employment statistics for various occupations based on its Occupational Employment Statistics ("OES") program. The OES program uses the Office and Management and Budget's Standard

9

Occupational Classification ("SOC") system for classifying "workers and jobs into occupational categories for the purpose of collecting, calculating, analyzing, and disseminating data."[5] *See* http://www.bls.gov/oes/oes_ques.htm#other; last visited March 17, 2015.  The SOC classification system is different from the DOT's classification system.  As a result the occupational classifications encompassed by the BLS's OES program do not overlap with or correspond to the DOT's occupational classifications.  Thus, Plaintiff's challenge to the VE's testimony regarding the availability of jobs for each DOT category at issue is inherently problematic as it relies on statistics gleaned from a different classification system.  Furthermore, Plaintiff does not adequately demonstrate the relevancy of the specific OES data he relies on.

In order to identify potentially applicable OES employment data, Plaintiff translated the DOT job codes provided by the VE to SOC job codes by using code translation data on a website, http://onetonline.org/crosswalk/.  However, Plaintiff does not provide any evidence or information to establish the reliability or accuracy of this job-code conversion website. Nonetheless, based on this "crosswalk" website, Plaintiff argues that the DOT occupational classification of "leaf tier," DOT No. 559.687-138, translates to SOC code 53-7062.00.  *See* Doc. 16 at 12-13; *also see* http:/ / www.onetonline.org/crosswalk/; last visited March 18, 2015.  In the OES system, this SOC code, in turn, corresponds to the "Laborers and Freight, Stock, and Material Movers, Hand" occupational subcategory, which itself falls within the broader "Transportation and Material Moving Occupations" classification.  *See* http://www/bls.gov/oes/current/oes_stru.htm; last visited March 18, 2015.  Plaintiff argues that the VE's testimony that there are 5000 leaf tier jobs in the State of California is contradicted by the OES, which, for the "Laborers and Freight, Stock, and Material Movers, Hand" occupational

---

[5] The 2010 SOC system, the system currently in use, contains 840 detailed occupations, aggregated into 461 broad occupations.  In turn, the SOC combines these 461 broad occupations into 97 minor groups and 23 major groups. See http://www.bls.gov/oes/oes_ques.htm#other; last visited March 17, 2015

sub-category of the "Transportation and Material Moving Occupations" classification, lists only 460 national jobs in the "Tobacco Manufacturing" sector. Doc. 16 at 12-13; s*ee also* http://data.bls.gov/oes/datatype.do; last visited March 18, 2015. However, based on its description in the DOT, the "leaf tier" job could reasonably be included in other sectors in the OES system as well, such as the "Beverage and Tobacco Product Manufacturing" sector.[6] Moreover, based on the DOT's description, "leaf tier" is not a transportation-related job, and could reasonably be included in other SOC categories and classifications, such as the "Food and Tobacco Roasting, Baking, and Drying Machine Operators and Tenders" sub-category in the "Production Occupations" classification, among others.[7] *See* http://www/bls.gov/oes/current/oes_stru.htm. Plaintiff cites job numbers from one sector of the sub-category "Laborers and Freight, Stock, and Material Movers, Hand" (SOC code 53-7062) within the "Transportation and Material Moving Occupations" classification, on the basis of a crosswalk website, without providing any evidence or information regarding the reliability and accuracy of this website.[8] The Court is not persuaded that the alternative job numbers cited by Plaintiff call into question the testimony of the VE regarding the availability of leaf tier and other material handler jobs compatible with Plaintiff's RFC.

Plaintiff also challenges the VE's testimony regarding the number of "ampoule sealer" jobs (DOT No. 559.687-014) available in the State of California. Specifically, using the crosswalk website discussed above, Plaintiff alleges that the DOT's "ampoule sealer"

---

[6] Indeed, the OES states that 9110 jobs exist nationally for the Beverage and Tobacco Product Manufacturing Sector for SOC No. 53-7062. *See* http://data.bls.gov/oes/datatype.do; last visited March 18, 2015. It is likely that other SOC classifications would also similarly subsume the DOT's "leaf tier" occupation classification.

[7] The DOT describes the leaf tier classification as follows: "Ties tobacco leaves in hands (bundles) to facilitate processing. Selects loose leaves for hand and arranges leaves with butt ends together. Winds tie leaf around butts and pulls end of tie leaf into hand." DOT, Fourth Edition, Revised 1991. The Industry Designation for this occupation in the DOT is "Tobacco Industry." *Id.*

[8] The website cited by Plaintiff, www.onetonline.org/crosswalk/, indicates that occupations covered by the SOC code 53-7062 include freight moving jobs, dock worker and warehouse worker jobs, and other manual labor jobs that are not classified within other SOC codes. *See* http://www.onetonline.org/link/summary/53-7062.00; last visited March 18, 2015.

occupational classification corresponds to SOC code 53-7064, i.e., the occupational sub-category "Packers and Packagers, Hand," within the broader occupational classification of "Transportation and Material Moving Occupations."  Doc. 16 at 12-13; *see also* http://www/bls.gov/oes/current/oes_stru.htm; last visited March 18, 2015.  Plaintiff asserts that the VE's testimony that there are 5000 "ampoule sealer" jobs in California is contradicted by the OES, which, for the "Packers and Packagers, Hand" occupational sub-category within the "Transportation and Material Moving Occupations" classification, lists only 2,970 national jobs in the "Pharmaceutical and Medicine Manufacturing" sector.  However, based on the applicable DOT definition, the ampoule sealer job is not a transportation-related job, and it could also reasonably be included in other SOC sub-categories and classifications in the OES system.  For example, there clearly are multiple potentially relevant subcategories within the "Production Workers" classification, and perhaps more than one applicable industrial sector.[9]  Plaintiff cites job numbers from one sector of the sub-category "Packers and Packagers, Hand" (SOC code 53-7064) within the "Transportation and Material Moving Occupations" classification, on the basis of a crosswalk website, without providing any evidence or information regarding the reliability and accuracy of this website.  The Court is not persuaded that the alternative job numbers cited by Plaintiff call into question the testimony of the VE regarding the availability of ampoule sealer jobs and other hand-packaging jobs compatible with Plaintiff's RFC.

Finally, Plaintiff challenges the VE's testimony regarding the number of "assembler" jobs (DOT No. 700.684-014) available in the State of California.  Specifically, using the crosswalk website discussed above, Plaintiff alleges that the DOT's "assembler" occupational classification

---

[9] The DOT defines the "ampoule sealer" occupation as follows: "Seals ampoules filled with liquid drug products, preparatory to packaging.  Rotates neck of ampoule in flame of bunsen burner to melt glass.  Grips tip of ampoule, using tweezers, and draws tip away from neck to seal ampoule as glass hardens.  Places sealed ampoule in basket for sterilization and inspection.  May hold unsealed ampoule against jet of inert gas to displace air.  May immerse sealed ampoules in dye bath to test for leaks.  May tend machines that steam-wash and fill ampoules.  DOT, Fourth Edition, Revised 1991.  The Industry Designation for this occupation in the DOT is: "Pharmaceuticals and Related Products Industry."

corresponds to SOC code 51-999, i.e., the occupational sub-category "Production Workers, All Other," within the broader occupational classification of "Production Occupations." *See* http://www/bls.gov/oes/current/oes_stru.htm; last visited March 18, 2015.  Plaintiff challenges the VE's testimony that 3000 assembler jobs exist in California based on the fact that the OES lists 230 jobs nationally in the "Jewelry and Silverware Manufacturing" sector of the "Production Workers, All Other" occupational sub-category of "Production Occupations."  However, the Court is not persuaded that all applicable assembler jobs included in the OES are contained in the "Production Worker, All Other" sub-category of the "Production Occupations" classification.[10]  Indeed, several sub-categories within the Production Occupations classification appear relevant at first glance and would merit further scrutiny: Assemblers and Fabricators (SOC code 51-2000); Assemblers and Fabricators, All Other (SOC code 51-2099); Team Assemblers (SOC. code 51-2092); and Jewelers and Precious Stone and Metal Workers (SOC code 51-9071); among others.  Plaintiff cites job numbers from one sector of the sub-category Production Workers, All Other (SOC code 51-9199) on the basis of a crosswalk website, without providing any evidence or information regarding the reliability and accuracy of this website.  The Court is not persuaded that the alternative job numbers cited by Plaintiff call into question the testimony of the VE regarding the availability of assembler jobs compatible with Plaintiff's RFC.

The Court declines to discredit the VE's testimony in light of the inadequacy and dubious relevance of the alternative job numbers cited by the Plaintiff.  *See Lang v. Comm'r of Soc. Sec.*, No. 1:13-CV-00590-SAB, 2014 WL 1383247, at *5-*7 (E.D. Cal. Apr. 8, 2014); *Alanis v. Comm'r of Soc. Sec.*, No. 1:13-CV-01306-SAB, 2014 WL 4960789, at *5 (E.D. Cal. Oct. 1, 2014).  Accordingly, the Court will not disturb the ALJ's step five determination.

---

[10] The DOT defines the "assembler" occupation as follows: "Assembles jewelry, such as rings, lockets, bracelets, brooches, and watchcases, using pliers, screwdriver, and jeweler's hammer.  May use foot press."  DOT, Fourth Edition, Revised 1991.  The Industry Designation for this occupation in the DOT is Jewelry, Silverware, and Plated Ware Industry.  *Id.*

**C. The ALJ Properly Discounted Plaintiff's Subjective Symptom Testimony**

    (i)    <u>Summary of Plaintiff's Testimony</u>

On November 15, 2011, Plaintiff testified at a hearing before an ALJ and was represented by counsel. AR 31-51. Plaintiff testified that he completed high school and lived with his girlfriend and her family. AR 33-34. Plaintiff was 5'4" tall and weighed approximately 490 pounds. AR 33. Plaintiff did not drive. AR 34. Plaintiff could generally take care of his personal needs. AR 35. He could attend social gatherings, but most of the time his family came over to visit him. AR 35-36. Plaintiff could not stand long enough to cook but could microwave food; he could shop using a motor cart. AR 35. Plaintiff picked up around the house, but also needed to nap during the day. AR 36. Plaintiff's hobby was drawing, which he engaged in frequently. AR 36. Plaintiff had only had a few brief temporary jobs. AR 36.

Plaintiff testified that he had constant "excruciating" lower back pain, and would not be functional without medication. AR 37. Plaintiff also had pain in both knees, mostly when he walked; sometimes he felt his legs would "come out from under" him because of his weight. AR 37-38. Walking and sitting were not comfortable for Plaintiff; standing up was the most comfortable position. AR 37. When Plaintiff sat for a long time he had trouble breathing. AR 37. Plaintiff also had trouble sleeping at night because he gasped for air, but he slept during the day. AR 38. Plaintiff could not do much to lose weight because of his back pain. AR 39. Plaintiff usually used a cane when he went out, for support. AR 39-40.

Plaintiff testified that he could sit for 15-20 minutes before he needed to stand up and that he could stand for 10 minutes at a time, before needing to sit down again. AR 40. Plaintiff could walk half a block at a time. AR 40. He had bad cracks on the bottoms of his feet that hurt a great deal. AR 41-42. Plaintiff treated the cracks by putting Vaseline and lotion on his feet. AR 42. Plaintiff stated that his feet would also swell at least three times a day, so he lies down and

elevates his legs. AR 42. Plaintiff stated that he lies down to rest and nap during the day for at least 6 hours every day. AR

43. Plaintiff testified that he went to bed at 8:30 or 9:00 p.m. and woke up around 7:00 or 8:00 a.m. AR 43. Plaintiff stated that during the day he could be up and about for 30 minutes at a time, but after each 30-minute period of activity he needed to lie down for an hour. AR 44. Plaintiff testified that he could watch television straight through without a break for one hour at a time, but after doing that he needed to stand for 30 to 45 minutes. AR 45. Plaintiff stated it was hard for him to climb and bend, and he could not kneel. AR 41. Plaintiff could lift no more than ten pounds. AR 42. Finally, Plaintiff testified that he tried to "walk around a lot to lose weight" but that his pain interfered with his attempts. AR 46. Plaintiff stated that he walked around in his yard and to the mailbox, which is about a half a block away. AR 46, 40. Plaintiff stated that his pain medications, including Vicodin, Soma and "some over the counter stuff" helped to control his pain. AR 39.

(ii)  <u>Applicable Law</u>

In evaluating the credibility of a claimant's testimony regarding subjective complaints of pain and other symptoms, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id*. The claimant is not required to show that the impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id*. If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony regarding the severity of the symptoms if she gives "specific, clear and convincing reasons" for the rejection. *Id*.

15

Regarding credibility determinations by an ALJ, the Ninth Circuit has held as follows:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009); 20 C.F.R. §§ 404.1529, 416.929; Social Security Ruling ("SSR") 96-7p, available at 1996 WL 374186. Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). Finally, an ALJ's credibility finding must be properly supported by the record and sufficiently specific to assure a reviewing court that the ALJ did not "arbitrarily discredit" a claimant's subjective testimony. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)).

    (iii)    <u>Analysis</u>

In this case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce his alleged symptoms. AR 22. However, the ALJ further determined that Plaintiff's statements about the intensity, persistence, and limiting effects of those symptoms were not credible to the extent they were inconsistent with her assessment of Plaintiff's residual functional capacity. AR 22. Absent affirmative evidence of malingering, the ALJ was required to provide clear and convincing reasons for discounting Plaintiff's subjective symptom testimony.

The ALJ discounted Plaintiff's subjective symptom testimony on the following grounds:

16

(1) Plaintiff's complaints about the severity of his symptoms was inconsistent with the objective evidence in the record; (2) Plaintiff has only received conservative treatment which was not commensurate with his complaints of totally disabling pain; (3) although Plaintiff has continually been advised to lose weight, his doctor noted that he was not motivated; (4) the medical record, though limited, reflects that Plaintiff reported that his pain was controlled with medications with no side effects; (5) and Plaintiff's daily activities were not as limited as would be expected given his complaints of disabling symptoms and limitations.

First the ALJ found that the objective medical evidence and the results of Plaintiff's physical examination contained in the record do not support Plaintiff's subjective complaints. AR 22.  Specifically, the ALJ noted that Plaintiff "had a waddling gait, but his balance was maintained with no assistive devices.  The claimant had normal muscle bulk and tone without atrophy, strength was 5/5 without focal motor deficits, and sensation was intact with good hand coordination."  AR 22.  Although Plaintiff had arthralgia in his knees and mildly diminished flexion range of motion, he had no effusion or crepitus.  AR 22.  Examinations show no cardiovascular, pulmonary, gastrointestinal, or genitourinary abnormalities.  AR 22.  The ALJ further noted that although Plaintiff complained of low back pain, his range of motion of the lumbar spine was not impaired and he showed no radicular signs or symptoms.  AR 22.  The ALJ observed that "no doctor has imposed any limitations due to claimant's weight."  AR 22.

Although an ALJ may not rely solely on the inconsistency between objective findings and a claimant's subjective claims in order to reject the latter, *Light*, 119 F.3d at 792, an ALJ may properly consider such an inconsistency as one factor among others in making his credibility determination. *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).  Here the ALJ gave multiple reasons for discounting Plaintiff's testimony; accordingly the ALJ's analysis of the inconsistency between

17

Plaintiff's subjective complaints and the objective medical evidence constitutes a specific, clear and convincing reason, supported by the record as a whole, for his adverse credibility determination.  *See* AR 236-240; AR 270 (lumbosacral spine series revealed normal findings).

Next, the ALJ found that Plaintiff's credibility was undermined by that fact that he has not received treatment for pain that was commensurate with his complaints of disabling pain.  AR 22.  Specifically, the ALJ stated, "[t]he claimant has not received treatment consistent with a chronic pain syndrome such as biofeedback, acupuncture, use of a TENS unit, physical therapy, or attendance at a pain management clinic.  Surgery has not been recommended."  AR 22.  The ALJ noted that although Plaintiff has continually been advised to lose weight, his treating doctor specifically noted that he was not motivated.  AR 22.  The ALJ properly relied on the fact that Plaintiff had not required pain management or surgery or other interventions to manage his pain in discounting his complaints of disabling symptoms.  *See, e.g., Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir.2001); *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir.2007), citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir.1995) ("evidence of "conservative treatment" is sufficient to discount a claimant's testimony regarding severity of an impairment"); *de Santacruz v. Astrue*, 2012 WL 2264270, *5 (C.D. Cal. June 18, 2012) (in discrediting claimant's subjective symptom testimony, ALJ properly considered discrepancy between claimant's subjective complaints and the nature and extent of the treatment obtained).  The ALJ's reasoning is specific, clear and convincing, and is supported by substantial evidence, as the medical record does not demonstrate that Plaintiff required aggressive treatment for his stated disabling symptoms.

The ALJ also noted that Plaintiff's credibility was undermined by the fact that the medical record reflected that Plaintiff's pain was controlled with medication, with no side effects.  AR 22.  The consultative examiner noted in October 2009 that Plaintiff was not taking any medications except Motrin, which he took as needed and obtained partial relief.  AR 36.  Subsequently,

Plaintiff took additional pain medications such as Vicodin and Soma and reported that his pain was controlled with the medication, without any side effects. AR 279; 287; 289; 291; 293; 295; 297; 299; 307; 309; 310. During a March 2011 doctor visit, Plaintiff was simply prescribed analgesics for his back pain. AR 290. In June 2011, Plaintiff reported that he was doing well with his pain medication. AR 283. The ALJ properly relied on the ample evidence in the record that Plaintiff's pain was well-controlled by medication to discount his subjective symptom testimony.

Finally, in making her credibility determination, the ALJ relied on inconsistencies between Plaintiff's daily activities and his subjective complaints of disabling symptoms. The ALJ stated, "[t]he claimant has described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." AR 21. The ALJ noted that the claimant largely took care of his personal needs, could shop using a motor cart, visit with his friends and family, draw, and watch television. AR 21. The ALJ further observed that Plaintiff picked up his living room (which usually took 30 minutes), took out the trash from his home to a dumpster using a wagon, picked up his yard (which usually took 1 hour), and watched his step daughter play but could not play with her. AR 21, 181-82. Although, the Plaintiff described limited daily activities, his testimony about his daily activities appears to contradict his subjective symptom testimony that he could sit for no more than 15-20 minutes at a time and could stand for no more than 10 minutes at a time, and that after every thirty minutes of activity he need to lie down for an hour. AR 40; 44. The ALJ's reliance on the inconsistency between Plaintiff's activities and his subjective complaints of totally disabling symptoms is supported by substantial evidence and the Court may not second-guess the ALJ's determination. *See, e.g., Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) ("[e]ven where [the daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's

testimony to the extent that they contradict claims of a totally debilitating impairment"); *Orn v. Astrue*, 495 F.3d 625, 639 (2007) (claimant's daily activities that contradict claimant's other testimony vitiate claimant's credibility).

In sum, the ALJ cited specific, clear and convincing reasons, based on permissible grounds and supported by the record as a whole, for rejecting Plaintiff's subjective complaints. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196-97 (9th Cir. 2004). As such, the ALJ's credibility determination is proper.

## CONCLUSION

The Court finds that the ALJ's decision is free of legal error and is supported by substantial evidence in the record as a whole. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Carolyn Colvin, the Acting Commissioner of Social Security, and against Plaintiff Arthur Victor Leija.

IT IS SO ORDERED.

Dated:   **March 26, 2015**           **/s/ Gary S. Austin**
                                      UNITED STATES MAGISTRATE JUDGE